1  Daniel Hutchinson (Bar No. 239458)
   dhutchinson@lchb.com
2  Lin Y. Chan (Bar No. 255027)
   lchan@lchb.com
3  LIEFF CABRASER HEIMANN &
     BERNSTEIN, LLP
4  275 Battery Street, 29th Floor
   San Francisco, California 94111
5  Telephone:  (415) 956-1000
   Facsimile:   (415) 956-1008
6
   Julian Burns King (Bar No. 298617)
7  julian@kingsiegel.com
   Elliot J. Siegel (Bar No. 286798)
8  elliot@kingsiegel.com
   KING & SIEGEL LLP
9  724 S. Spring Street, Suite 201
   Los Angeles, California 90014
10 Telephone:  (213) 419-5101
   Facsimile:   (213) 465-4803
11
   *Counsel for Plaintiffs and the Proposed Class*
12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16 Marcie Le and Karen Dao, individually       Case No. 8:18-cv-01548
   and on behalf of all others similarly
17 situated,                                    **PLAINTIFFS' UNOPPOSED**
                                                **MOTION TO DIRECT NOTICE TO**
18            Plaintiffs,                        **THE CLASS**
        v.
19                                              Hon. David O. Carter
   Walgreen Co., an Illinois corporation;
20 Walgreen Pharmacy Services Midwest,         Hearing Date:   April 5, 2021
   LLC, an Illinois limited liability          Hearing Time:   8:30 a.m.
21 company; and Walgreens Boots
   Alliance, a Delaware corporation,
22
            Defendants.
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. vi

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ......................................................................................... 2

    A.    Procedural History ........................................................................ 2

    B.    Class Certification ......................................................................... 2

    C.    Appeal ........................................................................................... 3

    D.    Settlement Negotiations ................................................................ 3

III.   SUMMARY OF THE SETTLEMENT TERMS ......................................... 4

    A.    Settlement Class ............................................................................ 4

    B.    Settlement Consideration .............................................................. 4

    C.    Proposed Notice Plan ................................................................... 5

    D.    Settlement Release ........................................................................ 6

IV.   LEGAL STANDARD ................................................................................ 7

V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. ........ 7

    A.    The Class Has Been Zealously Represented.................................. 8

    B.    The Settlement Agreement Results from Arm's-Length
          Negotiations. ............................................................................... 11

    C.    The Settlement Agreement Represents Substantial Relief for the
          Class. .......................................................................................... 13

          1.    The Settlement Is Fair, Reasonable, and Adequate................. 13

          2.    Payment to Class Members Is Straightforward. ..................... 16

          3.    Counsel Will Seek Reasonable Attorney's Fees. .................... 17

          4.    There Are No Other Related Agreements. .............................. 18

    D.    The Agreement Treats Class Members Equitably. ............................ 19

VI.   THE SETTLEMENT CLASS MERITS CERTIFICATION....................... 20

    A.    The Numerosity, Commonality, Typicality, and Adequacy
          Requirements of Rule 23(a) Are Met. ........................................... 21

    B.    The Settlement Class Satisfies the Requirements of Rule
          23(b)(3). ...................................................................................... 21

    C.    The Court Should Appoint Class Counsel. .................................... 23

VII.  THE COURT SHOULD APPROVE THE NOTICE PROGRAM AND
     DIRECT NOTICE TO THE SETTLEMENT CLASS. .............................. 24

VIII. THE FINAL FAIRNESS HEARING SHOULD BE SCHEDULED. ........... 25

IX.   CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abelar v. Am. Residential Servs., L.L.C.*,
No. 19-00726, 2019 WL 6054607 (C.D. Cal. Nov. 14, 2019) .............................12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)......................................................................................20, 21, 24

*Augustus v. ABM Sec. Servs., Inc.*,
2 Cal. 5th 257 (2016) .........................................................................................17

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015).............................................................................13

*Boyd v. Bank of Am. Corp.*,
No. 13-cv-0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)..........................18

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ..................................................................................17

*Carter v. Anderson Merchs., LP*,
Nos. 08-0025, 09-0216, 2010 WL 1946784 (C.D. Cal. May 11, 2010)...........7, 11

*Cicero v. DirecTV, Inc.*,
No. 07-cv-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ..........................18

*Deaver v. Compass Bank*,
No. 13-cv-0222, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ..........................14

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
No. CV09-5457, 2016 WL 5938722 (C.D. Cal. May 16, 2016) ..........................14

*Eisen v. Porsche Cars N. Am., Inc.*,
No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .............11

*Epstein v. Walgreen Pharmacy Services Midwest, LLC*,
No. 19-cv-1323 (C.D. Cal.) ..................................................................................16

*Franco v. Ruiz Food Prods.*,
No. 10-cv-02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................11

*Gaudin v. Saxon Mortg. Servs., Inc.*,
No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015).........................19

*Glass v. UBS Fin. Servs.*,
No. C-06-4068, 2007 WL 221862 (N.D. Cal. 2007)............................................14

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV 10-06352, 2014 WL 10212865 (C.D. Cal. July 28, 2014).....................12

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3    *In re Bluetooth Headset Prods. Liab. Litig.*,
        654 F.3d 935 (9th Cir. 2011) ............................................................ 12
4

5    *In re Diet Drugs*,
        Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) .................. 22

6    *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
        No. C 06-4333, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ........................ 22
7

8    *In re Heritage Bond Litig.*,
        No. 02-ml-01475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................ 11, 12

9    *In re High-Tech Emp. Antitrust Litig.*,
        No. 11-cv-02509, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .................... 20
10

11   *In re Hyundai & Kia Fuel Econ. Litig.*,
        926 F.3d 539 (9th Cir. 2019) ........................................... 7, 20, 21, 22

12   *In re Lithium Ion Batteries Antitrust Litig.*,
        No. 13-MD-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .................... 21
13

14   *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) ............................................................ 18

15   *In re Online DVD-Rental Antitrust Litig.*,
        779 F.3d 934 (9th Cir. 2015) ...................................................... 20, 24
16

17   *In re Pac. Enters. Sec. Litig.*,
        47 F.3d 373 (9th Cir. 1995) ............................................................ 17

18   *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA)
        Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .......................................... 11
19

20   *In re Walgreen Co. Wage & Hour Litig.*,
        No. 11-cv-7664, 2014 WL 12853545 (C.D. Cal. June 24, 2014) ...................... 23

21   *Laffitte v. Robert Half Int'l, Inc.*,
        1 Cal. 5th 480 (2016) ................................................................. 17
22

23   *Lee v. JPMorgan Chase & Co.*,
        No. 8:13-cv-00511 (C.D. Cal. Nov. 24, 2014) ...................................... 13

24   *Linney v. Cellular Alaska P'ship*,
        151 F.3d 1234 (9th Cir. 1998) ...................................................... 14
25

26   *Malta v. Federal Home Mortg. Corp.*,
        No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ........................ 23

27   *Nat'l Rural Telecomm. Coop. v. DirecTV*,
        221 F.R.D. 523 (C.D. Cal. 2004) ................................................ 12, 16
28

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ........................................................................ 19

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F2d. 615 (9th Cir. 1982) ............................................................................... 12

*Ridgeway v. Walmart Inc.*,
   946 F.3d 1066 (9th Cir. 2020) ............................................................................. 17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................... 7, 15, 16

*Roes, 1–2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ............................................................................... 7

*Singh v. Roadrunner Intermodal Servs., LLC*,
   No. 15-cv-1497, 2019 WL 316814 (E.D. Cal. Jan. 24, 2019) ............................ 16

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................................................... 24

*Stovall-Gusman v. W.W. Granger, Inc.*,
   No. 13-cv-02540, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ....................... 14

*Tarlecki v. bebe Stores, Inc.*,
   No. C 05-1777, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) ............................ 13

*Thompson v. Transamerica Life Ins. Co.*,
   No. 18-cv-05422, 2020 WL 6145105 (C.D. Cal. Sept. 16, 2020) ....................... 19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ................................................................................. 7

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ..................................................................... 18

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ................................................................... 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................. 17

*Weeks v. Kellogg Co.*,
   No. 09-cv-8102, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ......................... 14

*White v. Experian Info. Sols., Inc.*,
   No. 05-cv-01070 (C.D. Cal.) ................................................................................ 22

*Williams v. MGM-Pathe Commc'n Co.*,
   129 F.3d 1026 (9th Cir. 1997) ............................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
### (continued)

**Page**

### RULES

Fed. R. Civ. P. 23(b)(3) ...........................................................................23, 24

Fed. R. Civ. P. 23(c)(2)...................................................................................24

Fed. R. Civ. P. 23(e) .......................................................................................19

Fed. R. Civ. P. 23(e)(1)..................................................................7, 8, 20, 24

Fed. R. Civ. P. 23(e)(2)............................................................................passim

Fed. R. Civ. P. 23(e)(3)...................................................................................18

Fed. R. Civ. P. 23(g)(1) ..................................................................................23

Fed. R. Civ. P. 23(g)(3) ..................................................................................23

Fed. R. Civ. P. 23, 2018 Advisory Committee notes ....................................8, 16, 19

### TREATISES

Rubenstein, 3 Newberg on Class Actions § 7:35 (5th ed. 2020) .............................21

Manual for Complex Litigation § 21.632 (4th ed. 2004) ........................................20

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 5, 2021 at 8:30 a.m., via telephone or videoconference pursuant to the Order of the Chief Judge 21-002 and the United States District Court for the Central District of California's Continuity of Operations Plan ("COOP"), Plaintiffs Marcie Le and Karen Dao ("Plaintiffs"), on behalf of themselves and all others similarly situated, will and hereby do move the Court for an order granting their Unopposed Motion to Direct Notice to the Class:

1. finding that the Court will likely approve the proposed class action settlement pursuant to Federal Rule of Civil Procedure 23(e)(2);

2. finding that the Court will likely certify the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3);

3. directing notice to the Settlement Class in connection with the proposed class action settlement, and approving the proposed forms and manner thereof;

4. appointing plaintiffs Marcie Le and Karen Dao as representatives for the Settlement Class for the purposes of disseminating notice;

5. appointing King & Siegel LLP and Lieff Cabraser Heimann & Bernstein, LLP as counsel for the Settlement Class;

6. authorizing retention of CPT Group, Inc. as notice and claims administrator; and

7. scheduling a hearing to determine whether the proposed settlements are fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

This Motion is based on this Notice of Motion and Motion to Direct Notice to the Class; the following memorandum of points and authorities; the Declarations of Daniel M. Hutchinson and Elliot J. Siegel, filed concurrently herewith; and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs brought this action on behalf of the approximately 4,629 retail pharmacists who worked for Walgreen Co., Walgreen Pharmacy Services Midwest, LLC, and Walgreens Boots Alliance (collectively, "Walgreens") from July 27, 2014 through the present.  Plaintiffs alleged that Walgreens failed to provide its pharmacists with off-duty breaks.  Following extensive discovery, motion practice, and an appeal to the Ninth Circuit, the parties reached a settlement.  Plaintiffs request that the Court issue an order (1) finding that the Court would likely approve the settlement and certify the class, and (2) approving notice to members of that proposed Settlement Class.

Plaintiffs vigorously prosecuted the case and obtained an excellent result in the face of extraordinary risks.  The proposed settlement provides substantial compensation to Settlement Class Members—a common, non-reversionary fund of $6,800,000 to be disbursed automatically on a pro rata basis, without the need for a claim form.  The settlement terms are fair, reasonable, and adequate.  Settlement Class certification upon final approval is likely because, as the Court previously found, Plaintiffs satisfy numerosity, commonality, adequacy, and typicality, and the hotly-contested facts that the Court found precluded a finding of predominance during the litigation are inapposite in the context of settlement.

Pursuant to Rule 23, therefore, Plaintiffs respectfully request that this Court (1) find that it will likely approve the settlement; (2) find it will likely certify the Settlement Class upon final approval; (3) direct notice to the Settlement Class; (4) appoint Marcie Le and Karen Dao as representatives for the Settlement Class for purposes of disseminating notice; (5) appoint Plaintiffs' Counsel as counsel for the Settlement Class; (6) authorize retention of CPT Group, Inc. as notice and claims administrator; and (7) schedule a final fairness hearing, at which class members may be heard regarding the settlement.

## II.   BACKGROUND

### A.   Procedural History

On July 27, 2018, Ms. Le filed this action in California Superior Court.  *See* Dkt. No. 1.  Defendants removed the case to this Court on August 30, 2018.  *Id.*  On April 9, 2019, Plaintiffs' First Amended Complaint ("FAC") added Ms. Dao and asserted six class claims for violations of the California Labor Code;[1] the California Private Attorney Generals Act ("PAGA"), Labor Code § 2698 *et seq.*; and Business & Professions Code § 17200 *et seq*.  Dkt. No. 35.  The FAC also asserted three individual claims on behalf of Ms. Le.  *Id.* ¶¶ 89–116.

### B.   Class Certification

On February 13, 2020, after substantial discovery, Plaintiffs moved for certification of a class comprised of "all persons who are and/or were employed as non-exempt pharmacists by Walgreens in any Walgreens' California retail store or express pharmacy between July 27, 2014 and the date of trial."  *See, e.g.*, Dkt. Nos. 99 & 126.  Walgreens' opposition argued, *inter alia*, that Plaintiffs' claims were not typical of the putative class given their positions and other circumstances of their employment; Plaintiffs' interpretation of California law governing rest breaks was incorrect; and individual pharmacies' practices and individual pharmacists' interpretations of Walgreens' policies predominated over common issues.  Dkt. No. 104.  Plaintiffs replied on April 9, 2020.  Dkt. No. 114.  Walgreens filed a sur-reply on April 17, 2020.  Dkt. Nos. 121 & 123.

On April 27, 2020, the Court denied Plaintiffs' motion for class certification. Dkt. No. 126 ("Cert. Order").  Plaintiffs satisfied Rule 23's numerosity, typicality, adequacy, and commonality requirements.  *Id.* at 6–10.  While Walgreens' policies

---

[1] The FAC alleged:  (1) failure to provide rest and meal periods or premium pay in lieu thereof (Cal. Lab. Code §§ 226.7, 512, 558, and 1198); (2) failure to provide complete and accurate wage statements (Cal. Lab. Code §§ 226, 226.3); (3) failure to pay earned wages when due (Cal. Lab. Code §§ 201–203); and (4) failure to maintain accurate records (Cal. Lab. Code §§ 226(a), 1174(d), and 1174.5).

applied class-wide, the Court concluded that common issues did not predominate because Plaintiffs had not adduced sufficient evidence showing that the policies themselves—as opposed to, for example, individual pharmacies' applications of those policies—caused pharmacists to miss rest breaks. *Id.* at 11–14.

Plaintiffs moved for reconsideration. Plaintiffs argued that reconsideration was warranted due in part to Walgreens' production of new discovery. Dkt. No. 132. The Court denied the motion on June 5, 2020. Dkt. No. 144.

### C.    Appeal

On June 22, 2020, Plaintiffs filed a Petition for Permission to Appeal. *See* 9th Cir. Case No. 20-80101, Dkt. No. 1-2. The Ninth Circuit granted the Petition on July 22, 2020. *See id.*, Dkt. No. 9. On October 26, 2020, Plaintiffs filed their opening brief on appeal, as well as nine volumes of excerpts of record. 9th Cir. Case No. 20-55743, Dkt. Nos. 12–13, 17–19. Before Walgreens' brief in opposition was due, the parties reached a class settlement pursuant to the mediator's proposal discussed below. *See id.*, Dkt. No. 24. On December 21, 2020, Plaintiffs moved to stay the appeal pending approval of the proposed settlement before this Court. *Id.* On December 29, 2020, the Ninth Circuit granted the motion and stayed appellate proceedings until March 25, 2021. *Id.*, Dkt. No. 25.

### D.    Settlement Negotiations

On November 19, 2019, the parties attended an all-day private mediation with Lynn Frank, an experienced mediator with Frank & Feder Mediators. Hutchinson Decl. ¶ 32; Siegel Decl. ¶¶ 25–28. On August 17, 2020, the parties attended a second day-long mediation session with Ms. Frank. Hutchinson Decl. ¶ 34; Siegel Decl. ¶ 28. The parties did not resolve the matter, but continued to litigate. The mediator, however, remained engaged with the parties and, after subsequent communications with both parties regarding potential settlement, submitted a final mediator's proposal in light of the parties' respective risks on appeal. Hutchinson Decl. ¶ 35; Siegel Decl. ¶ 29. On December 14, 2020, the

1   parties accepted the mediator's proposal and agreed to the proposed settlement.  *Id.*

2   ## III.   SUMMARY OF THE SETTLEMENT TERMS

3   ### A.   Settlement Class

4   The Settlement Class is comprised of  "all persons who are and/or were

5   employed by Defendants in California at any time during the Class Period as hourly,

6   non-exempt pharmacy interns, pharmacy intern graduates, pharmacists, staff

7   pharmacists, multi-location pharmacists (both assigned and unassigned), and/or

8   pharmacy managers."[2]  Hutchinson Decl., Ex. 1 ("Agreement") ¶ I.C.  Walgreens

9   does not oppose certification of the Settlement Class.  *Id.* ¶ III.F.

10   ### B.   Settlement Consideration

11   The Agreement requires Walgreens to create a Gross Settlement Fund of

12   $6,800,000.  Agreement ¶¶ I.O, III.A, III.N.  After payment of the settlement

13   administrator's costs, Class Counsel's attorneys' fees and costs, Class

14   Representative enhancement awards, and the share attributable to the LWDA's

15   portion of PAGA penalties, approximately $3,808,333.33 will be available for

16   distribution to class members.  *Id.* ¶ III.N.6; *see also id.* ¶¶ I.P, III.A, III.N.2–5.

17   Class Members will receive an average of approximately $822.71 each.  Class

18   Members' Individual Settlement Payments will be distributed out of the net fund by

19   checks mailed to each class member at their last known mailing address.[3]  *Id.*

20   ¶ III.N.1.  Checks will be valid for 180 days from the date of the check.  *Id.*

21   ¶ III.N.1.d.  Subject to Court approval, funds from checks that remain uncashed

22   after that period shall be deposited with the California State Controller's Office's

23   Unclaimed Property Division in the name of the Settlement Class Member.  *Id.*

24   Each Settlement Class Member's award will be calculated by the Settlement

25   _____

26   [2] Unless otherwise specified, capitalized terms herein refer to and have the same meaning as the terms defined in Section I ("Definitions") of the Agreement.

27   [3] The Settlement Administrator will use skip-trace and other methods of locating

28   alternative addresses for those class members whose checks are returned as undelivered.  Agreement ¶ III.M.4.

- 4 -

Administrator based on a *pro rata* distribution, depending on each class member's number of Compensable Workweeks worked during the class period.  *Id.* ¶ III.N.1.a.  A multiplier (2.0x) will be applied to Compensable Workweeks before June 1, 2018.  *Id.*  The Agreement requires Walgreens to supply the Settlement Administrator with the Class Data—*e.g.*, class members' names, last known addresses, dates of employment—necessary to calculate and mail the Individual Settlement Payments.  *Id.* ¶¶ I.F, III.M.1, III.N.1.a.  $500,000 of the Gross Settlement Fund be allocated for settlement of claims for civil penalties under the PAGA.  *Id.* ¶ III.N.4.  $375,000 of that amount will be paid to the California Labor Workforce Development Agency; the remaining $125,000 will be distributed to Class Members as part of the Gross Settlement Fund.  *Id.*

### C.    **Proposed Notice Plan**

The proposed notice plan incorporates well-established best practices, and provides clear information regarding the Agreement's terms, the Final Fairness Hearing, Settlement Class Members' rights to dispute Walgreens' records regarding the Compensable Workweeks worked by class members and to object to or opt out of the Settlement, and the request for attorneys' fees and costs.  Agreement ¶ III.M.2, 5–7; Agreement, Ex. 1 ("Notice Packet").  CPT Group, Inc. ("CPT") is a leading class administration firm that will provide settlement notice and administration.  *Id.* ¶¶ I.CC, III.L.  Under the proposed notice plan:

1.    Walgreens will provide CPT with the Class Data for the purposes of preparing and mailing Notice Packets to Class Members.  Agreement ¶ III.M.1.

2.    CPT will search the National Change of Address Database (and/or similar databases) and otherwise exercise its best judgment to determine the current mailing address for each Settlement Class Member.  *Id.* ¶ III.M.3.

3.    CPT will disseminate Notice Packets to Settlement Class Members via First Class U.S. Mail.  *Id.*; Notice Packet.

4.    Any Notice Packets returned to CPT as non-delivered on or before the

1    Response Deadline shall be re-mailed to the forwarding address affixed thereto.  If

2    no forwarding address is provided, CPT will attempt to determine the correct

3    address by lawful use of skip-tracing, or other search using the name, address,

4    and/or Social Security number of the class member involved.  *Id.* ¶ III.M.4.  Class

5    members who received a re-mailed Notice Packet will have 15 extra days to

6    respond to the Notice.  *Id.*

7           **D.    Settlement Release**

8           In exchange for the Settlement consideration, the Settlement Class agrees to a

9    release of Walgreens' liability tailored and limited to the scope of Plaintiffs' claims

10   in this litigation.  Agreement ¶¶ I.X, III.C.  The Released Claims are "any and all

11   claims, debts, liabilities, demands, obligations, penalties, guarantees, costs,

12   expenses, attorney's fees, damages, action or causes of action of whatever kind or

13   nature, whether known or unknown, contingent or accrued, that are alleged, related

14   to or that reasonably could have arisen out of the same facts alleged in the Action

15   on a class or representative basis, including, but not limited to:  (1) failure to

16   provide rest periods; (2) failure to provide meal periods; (3) failure to provide

17   complete and accurate wage statements; (4) failure to pay earned wages when due;

18   (5) failure to maintain accurate records; (6) PAGA penalties based on any of the

19   foregoing claims in subsection (1)-(5); and (7) unlawful business practices in

20   violation of Business and Professions Code section 17200 et seq. based on any of

21   the foregoing claims in subsections (1)-(5) above."  The Released Claims also

22   include "claims that were raised, or that reasonably could have been raised, under

23   the applicable Wage Orders and California Labor Code provisions, including Labor

24   Code §§ 201, 202, 203, 226, 226.3, 226.7, 512, 558, 1174(d), 1174.5, 1198 and/or

25   2698 et seq., based on alleged violations of these Labor Code provisions and

26   applicable Wage Orders."  *Id.* ¶ I.X.  "The period of the Released Claims shall be

27   the Class Period."  *Id.*

28

- 6 -

## IV.    LEGAL STANDARD

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits."). Courts recognize as a matter of sound policy that settlements of disputed claims are encouraged and settlement approval hearings should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (internal quotes and citation omitted).

At this stage, the question is whether the settlement "is 'within the range of possible approval' and whether or not notice should be sent to class members." *Carter v. Anderson Merchs., LP*, Nos. 08-0025, 09-0216, 2010 WL 1946784, at *4 (C.D. Cal. May 11, 2010). "[S]ettlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)" only if "the parties negotiate a settlement agreement before the class has been certified." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019).

Before notifying the class of a proposed settlement, Rule 23(e)(2) requires the Court to determine whether it "will likely be able to":  (i) approve the settlement as "fair, reasonable, and adequate"; and (ii) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Because the Agreement meets these standards, notice should issue to the Settlement Class.

## V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

In determining whether the Agreement initially appears fair, reasonable, and adequate, the Court must consider at least whether:

(A)    the class representatives and class counsel have adequately represented

the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also id.*, Advisory Committee's note to 2018 amendment (describing these factors as "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal."). The Agreement satisfies each of the requirements of Rule 23(e)(2).

### A.    The Class Has Been Zealously Represented.

Prior to reaching a resolution, through more than two years of hard-fought litigation, Class Counsel closely examined the underlying facts and law and engaged in thousands of hours of litigation in support of the putative class's case.

The parties vigorously contested their respective discovery obligations from the outset. Hutchinson Decl. ¶¶ 5–6. Discovery disputes were presented as early as the parties' Joint Report on Rule 26(f) Conference (Dkt. No. 13), during the first Scheduling Conference held before the Court on December 3, 2018 (Dkt. No. 28), and in Plaintiffs' Motion for Leave to Amend (*see, e.g.*, Dkt. Nos. 22, 25, 27). Class-wide discovery similarly involved extensive motion practice, including Plaintiffs' August 12, 2019 Letter Motion to Compel (Dkt. Nos. 52, 53, 54); Plaintiffs' November 15, 2019 Letter Motion to Compel (Dkt. Nos. 64, 71, 73); and Defendants' January 1, 2020 Motion for Protective Order (Dkt. Nos. 82, 87, 92).

The complexity and volume of these disputes caused the Court to appoint a special master, the Hon. Jay C. Gandhi (ret.).  *See* Dkt. Nos. 28 & 39.

Plaintiffs' Counsel conducted extensive negotiations with Walgreens regarding the production of documents and data, the identification of custodians and document repositories, the use of search terms, the completeness of discovery responses, and deposition scheduling.  Hutchinson Decl. ¶ 9.  Although the parties met and conferred on numerous occasions to amicably resolve discovery disputes (*see generally* Dkt. No. 55 at 3–4; Dkt. No. 64), they twice required the assistance of Judge Gandhi to resolve discovery disputes.  *Id.* ¶ 10.  Judge Gandhi held telephonic status conferences and issued two opinions.  *Id.*

In total, Plaintiffs propounded six sets of requests for production, two sets of requests for admission, and three sets of interrogatories.  *Id.* ¶ 7.  In response to these requests, Defendants produced (and Plaintiffs reviewed) over 300,000 pages of documents on a short timeline.  *Id.* ¶ 11; Siegel Decl. ¶ 25.[4]  Meanwhile, Ms. Le and her counsel responded to responded to 27 interrogatories, 28 requests for admission, and 60 requests for production.  Hutchinson Decl. ¶ 24.  The parties took 10 fact witness depositions.  Defendants deposed Ms. Le and Ms. Dao.  *Id.* ¶¶ 25–26.  Plaintiffs' Counsel deposed eight Walgreens employees, including five Fed. R. Civ. P. 30(b)(6) witnesses.  *Id.* ¶¶ 14–22; Siegel Decl. ¶ 25.

Expert discovery was thorough and extensive.  Plaintiffs' counsel engaged four experts at a significant cost.  Hutchinson Decl. ¶¶ 27–28; Siegel Decl. ¶ 26.  Dr. Jon Krosnick's ensuing report contained some 90 pages of analysis on the

---

[4] These included documents concerning Ms. Le and Ms. Dao, such as payroll, timecard, employment, and medical records; company policies; training materials; internal investigation files; pharmacy locations; payrate spreadsheets; business planning and strategy documents; case filings from related litigation; Storewalk Summaries; job descriptions; competency and performance goals documents; reports on missed meal premiums; employee complaint hotline reports; custodial e-mails regarding meal and rest breaks, pharmacist job duties, and performance guidelines; meeting agendas; and others.  Hutchinson Decl. ¶ 12; Siegel Decl. ¶ 25.

feasibility of conducting a scientifically sound survey to determine the rate at which Walgreens' pharmacists may have missed rest breaks.  Dkt. No. 110-48. Defendants produced a 46-page report by Emil Czechowski, which analyzed Walgreens' timekeeping and payroll data and addressed certain contentions made by Dr. Krosnick.  Dkt. No. 104-21.  Dr. Krosnick produced a 13-page rebuttal report; Plaintiffs' second expert, Dr. David Breshears, likewise produced a rebuttal report that analyzed the data relied upon by Mr. Czechowski and drew the opposite conclusions therefrom.  Dkt. Nos. 118-39, 118-40.  Plaintiffs' counsel deposed Mr. Czechowski.  *See* Dkt. No. 118-2.  On July 15, 2020, Elizabeth Akhparyan Park, Pharm.D. APh, submitted an 18-page report addressing California Board of Pharmacy Laws and Regulations.  Hutchinson Decl. ¶ 29.  Joseph C. Sremack, the director in the Data Analytics & Automation practice at BDO USA, LLP, submitted a series of sealed declarations regarding Walgreens' prescription fulfillment system. *See* Dkt. No. 86.

The massive amounts of discovery and expert work summarized above served as the basis for Plaintiffs' motion for class certification.  Filings on the motion were extensive:  together, the parties submitted 109 pages of briefing, 52 pages of attorney declarations, and 158 exhibits (comprising 5,187 pages).  Even after the Court's initial denial of that motion, Plaintiffs continued to zealously advocate for the class by filing a motion for reconsideration, on which the parties submitted 93 pages of briefing, 48 pages of attorney declarations, and 150 exhibits (comprising 2,423 pages).  Plaintiffs then petitioned for a discretionary appeal before the Ninth Circuit.  After that petition was granted, Plaintiffs filed a 66-page opening merits brief and more than 1,700 pages of excerpts of record.  This matter was settled only after Plaintiffs' appellate filings.

Taken together, these litigation efforts show that the Agreement is the product of well-informed negotiations and vigorous advocacy.

**B.**  **The Settlement Agreement Results from Arm's-Length Negotiations.**

The Agreement arises out of extended, arm's-length negotiations between Plaintiffs' Counsel and Walgreens.  Hutchinson Decl. ¶¶ 30–37; Siegel Decl. ¶¶ 25–32; Fed. R. Civ. P. 23(e)(2)(B).  The adversarial motion practice and substantial discovery required comprehensive evaluation of the case's strengths and weaknesses, and ensured well-informed settlement discussions.  *In re Heritage Bond Litig.*, No. 02-ml-01475, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'") (quoting Manual for Complex Litigation § 30.42 (3d ed. 1995)); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) ("[T]he settlement is a product of informed, arms-length negotiations, and is therefore entitled to a presumption of fairness.").

Furthermore, a respected neutral mediator—Lynn Frank—presided over mediation sessions and subsequent negotiations.  Hutchinson Decl. ¶¶ 32–35, Siegel Decl. ¶¶ 25, 28–29.  Input and participation of an experienced mediator further supports the fairness of the process and settlement.  *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive.") (citing cases).[5]

In fact, the parties agreed to settlement in principle only by accepting Ms.

_____

[5] *See also Anderson Merchs.*, 2010 WL 144067, at *7 ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Franco v. Ruiz Food Prods.*, No. 10-cv-02354, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012) ("[T]he court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery.").

Frank's final mediator's proposal, which was made over 13 months after the parties' first in-person mediation.  Hutchinson Decl. ¶¶ 32, 35.  This further supports the arm's-length nature of the Agreement.  *See, e.g.*, *Abelar v. Am. Residential Servs., L.L.C.*, No. 19-00726, 2019 WL 6054607, at *5 (C.D. Cal. Nov. 14, 2019) (holding that "arm's length negotiations with an experienced neutral" weigh in favor of approval).

Plaintiffs' Counsel, who have years of experience litigating and settling complex class actions, *see* Hutchinson Decl. ¶¶ 48–68; Siegel Decl. ¶¶ 4–18, view the Agreement as fair and in the best interests of the Settlement Class.  *Cf. Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations and citation omitted).  "A presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced capable counsel after meaningful discovery."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (internal quotation and citation omitted); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014).

Separately, the Agreement bears no signs "of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F2d. 615, 625 (9th Cir. 1982).  The Ninth Circuit has identified three indicators of potential collusion or conflict in the settlement negotiation process: (i) when class counsel receives a disproportionate distribution of the settlement proceeds; (ii) when the parties negotiate a "clear sailing" arrangement providing for the independent payment of attorney's fees; and (iii) when the parties arrange for a reversion of unused funds to defendants.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–48 (9th Cir. 2011).  None of those hallmarks is present here.  As discussed below, the proposed fees for

Plaintiffs' Counsel, which are less than their lodestar, are not disproportionate.  Nor
does the Agreement include a "clear sailing" arrangement; the Agreement does not
make the Settlement Class's prospective monetary relief dependent upon attorneys'
fees.  *See generally* Agreement ¶ III.N.3; *Tarlecki v. bebe Stores, Inc.,* No. C 05-
1777, 2009 WL 3720872, at *2 (N.D. Cal. Nov. 3, 2009) ("In common fund
settlements where the fees are deducted from the common fund, the approval of the
settlement agreement as a whole does not depend on the quantum of the fees.").
Furthermore, there will be no reversion of unused funds to Walgreens; rather,
pursuant to the Agreement, uncashed checks will be sent to the California State
Controller's Office's Unclaimed Property Division.  *Id.* ¶ III.N.1.d.

## C.   The Settlement Agreement Represents Substantial Relief for the Class.

The class relief provided is more than "adequate," considering the (i) costs,
risks, and delay of further litigation; (ii) effectiveness of the proposed distribution
plan; (iii) terms of any proposed award of attorney's fees; and (iv) agreement
required to be identified under Rule 23(e)(3).  *See* Fed. R. Civ. P. 23(e)(2)(C).

## 1.   The Settlement Is Fair, Reasonable, and Adequate.

Plaintiffs recovered a substantial sum for the Settlement Class.  By all
measures, this $6,800,000 recovery falls well within the range of possible approval,
particularly given the high-risk and complex nature of Plaintiffs' case.

The high-risk nature of the case was borne out in the Court's rulings on class
certification.  This settlement comes *after* the Court denied Plaintiffs' motions for
class certification and reconsideration and while Plaintiffs' appeal of those denials
was still pending—a time of "significant risk that litigation might result in a lesser
recover[y] for the class or no recovery at all."  *Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245, 255 (N.D. Cal. 2015).[6]  Settlement at this stage of the case avoids

---

[6] *See also Lee v. JPMorgan Chase & Co.*, No. 8:13-cv-00511 (C.D. Cal. Nov. 24,
2014) (Stanton, J.), Dkt. No. 80 at 19 (finding that pending appeal of decision on

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

the risks attending whether the case could be maintained as a class through trial. *See Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457, 2016 WL 5938722, at *6 (C.D. Cal. May 16, 2016) (finding that "the uncertainty of both obtaining and maintaining class action status . . . weighs in favor of final approval.").

Recovery for the class also would require prevailing on the merits during future dispositive motion practice and/or at trial.  Although Plaintiffs remain confident in the merits of their case, the procedural history of this litigation demonstrates that any victories would be hard-fought and possibly result in further appeals.  Again, such risks weigh in favor of settlement.  *Cf., e.g.*, *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540, 2015 WL 3776765, at *3 (N.D. Cal. June 17, 2015) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."); *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. 2007) (approving settlement in light of "the expense and uncertainty of litigating an appeal.").

Losing the appeal on non-certification, decertification, or a loss on the merits would be detrimental to class-wide recovery—indeed, in that scenario, most class members likely would recover nothing at all.  Such risks must be taken into account when judging reasonableness by comparison of the settlement amount to the value of the class claims.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (settlement amount should be a reflection of the total value of the claims discounted by the risks and costs of litigation); *Weeks v. Kellogg Co.*, No. 09-cv-8102, 2013 WL 6531177, at *15 (C.D. Cal. Nov. 23, 2013) (Morrow, J.)

class certification constituted risk weighing in favor of preliminarily approving the proposed class-wide settlement of wage-and-hour claims); *Deaver v. Compass Bank*, No. 13-cv-0222, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (finding settlement reasonable given risks where, *inter alia*, "Plaintiff also acknowledges the difficulty and risk of both certification and trial as Plaintiff's off-the-clock and meal period claims are factually complex and difficult to prove in light of the California Supreme Court's decision in *Brinker*.").

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).").

In late 2019, Plaintiffs undertook to estimate Walgreens' *maximum* damages exposure—based on their assumption that *all* eligible shifts violated California meal and rest break law—using class size, rate of pay, and workweek data produced by Walgreens. Assuming Plaintiffs prevailed on all aspects of the merits, and that they could maintain certification through trial, this maximal damages model concluded that Walgreens faced approximately $223,187,564.64 in damages for rest- and meal-break violations. Hutchinson Decl. ¶ 33. The Court's subsequent findings, however, doomed that analysis. Specifically, the Court concluded that "Plaintiffs' argument that a policy requiring an employee to remain on-premises violates California law *is incorrect*." Dkt. 126 (emphasis added). As such, Plaintiffs could only recover for rest and meal break periods where Walgreens actually constrained or pressured employees to forgo their breaks entirely. *See id.* While Dr. Krosnick did not complete a survey analyzing the percentage of eligible rest periods that met these criteria, it is certainly far, far less than 100%. Therefore, Walgreens' payment of $6,800,000 to the class represents a significant share of the present value of the case given the litigation posture.[7] *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, *discounted to present value*." (emphasis added)).

Indeed, on a pro-rata basis, the proposed recovery for Settlement Class Members is more favorable than a similar settlement recently considered by this Court. In *Epstein v. Walgreen Pharmacy Services Midwest, LLC*, No. 19-cv-1323

---

[7] Settlement also saves Plaintiffs and the Class from expending hundreds of thousands of dollars in additional costs to complete a reliable survey.

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

(C.D. Cal.) ("*Epstein*"), a putative wage-and-hour class action brought against
Walgreens by its California-based pharmacy technicians, the Court directed notice
to an estimated 6,251 members of the Settlement Class based on a proposed
settlement with a common fund of $3,300,000.  *See Epstein*, Dkt. No. 47 ¶ 4; Dkt.
No. 46-1 at 1.  Here, the Settlement Class Members (pharmacists, not pharmacy
technicians) number far less—approximately 4,629—and the Gross Settlement
Fund of $6,800,000 is more than double that obtained in *Epstein*.

The Agreement's benefits therefore far outweigh the uncertainty posed by
continued litigation.  *See W. Publ'g*, 563 F.3d at 966; *Nat'l Rural Telecomms.*, 221
F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the
significance of immediate recovery by way of the compromise to the mere
possibility of relief in the future, after protracted and expensive litigation." (citation
omitted)).  While proceeding with litigation could add years to the resolution of this
case, given the legal and factual issues raised and the likelihood of further appeals,
the Agreement provides prompt and concrete relief.  This factor thus weighs
strongly in favor of preliminary approval of the Agreement.[8]

### 2.      Payment to Class Members Is Straightforward.

"Measuring the proposed relief may require evaluation of any proposed
claims process."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee notes.  Here,
the Agreement provides direct monetary relief to class members.  Payments will be
made automatically to every Class member without the need to submit a claim

---

[8] For these same reasons, the Court should approve the Agreement's proposed
PAGA penalty payment of $500,000.  *See Singh v. Roadrunner Intermodal Servs.,
LLC*, No. 15-cv-1497, 2019 WL 316814, at *4–5 (E.D. Cal. Jan. 24, 2019).
Twenty-five percent of that penalty ($125,000) will be distributed to Class
Members as part of the common fund.  Courts have approved similar PAGA
payments and distributions as reasonable in light of the risks of continued litigation.
*Cf., e.g.*, *id.* at *5 (collecting cases supporting final approval of settlement in which
"[t]he proposed $100,000 [PAGA] penalty payment . . . represents approximately
one percent of the estimated $9.25 million gross settlement amount and will be
allocated across the entire class.").

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

form.  *See generally* Agreement ¶¶ III.M & III.N.

### 3.   Counsel Will Seek Reasonable Attorney's Fees.

In evaluating the adequacy of the Agreement, the Court also must take into account the terms of any proposed attorney's fees, including the timing of payment. Fed. R. Civ. P. 23(e)(2)(C)(iii).  Because California law governed the claims in the case, it also governs the fee request.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under California law, the proposed attorney's fees are squarely supported by the percentage-of-the-fund method of calculating attorneys' fees applicable to common fund cases like this one.  *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480 (2016) (approving trial court's award of 33.3% of $19 million settlement for attorneys' fees).  Here, the Agreement contemplates an attorney's fees award of one-third (33.33%) of the total recovery, which is less than Plaintiffs' counsel' lodestar and reasonable given the complexity and risks involved in this case.  *Id.*; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (no abuse of discretion where the "$4 million award (thirty-three percent [of the class's recovery]) for attorneys' fees is justified because of the complexity of the issues and the risks").

Plaintiffs' Counsel prosecuted the putative class's claims on a contingency basis, thereby bearing the risk of no recovery despite investing thousands of hours and hundreds of thousands of dollars in expenses into prosecuting and resolving the case.  *See, e.g.*, Siegel Decl. ¶ 44.  That risk was heightened by the evolving nature of the governing case law, including *Brinker* (2012),[9] *Augustus* (2016),[10] and the Ninth Circuit's interpretation those cases in *Ridgeway v. Walmart Inc.*, 946 F.3d 1066 (9th Cir. 2020), which was handed down after Plaintiffs filed their FAC and shortly before Plaintiffs moved for class certification.  Proving Plaintiffs' claims on a class-wide basis required the application of that shifting legal framework to the

---

[9] *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).

[10] *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016).

- 17 -

complex facts of this case—*e.g.*, Walgreens' employment policies, performance metrics, and computer systems; and extrinsic factors like the ethical and statutory codes governing pharmacists' conduct. *See, e.g.*, Cert. Order at 11-14. Plaintiffs' Counsel likewise bore the risk that Walgreens did not maintain certain data that might assist in proving missed rest breaks, and that such proof therefore would need to come by way of complex (and expensive) expert analysis—a risk that materialized. *See, e.g.*, Dkt. No. 99 at 22; Dkt. No. 118 at 15.

Further, in common fund cases such as this one, fee awards of one-third of the fund are frequently found to be reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding district court's award of 33 1/3 percent of the settlement fund); *Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33% awarded). Such awards are especially common in California wage-and-hour cases, which arise under California law and therefore require application of California fee jurisprudence. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (Carter, J.) (collecting cases; observing that "[d]ecisions in analogous wage and hour suits have found awards of one third of the common fund appropriate"); *Cicero v. DirecTV, Inc.*, No. 07-cv-1182, 2010 WL 2991486, at *6–7 (C.D. Cal. July 27, 2010) (fees of one-third of the common fund is common in wage-and-hour settlements below $10 million; case survey of class action settlements demonstrate that "50% [of settlement fund] is the upper limit, with 30–50% commonly being awarded in cases in which the common fund is relatively small"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297–98 (N.D. Cal. 1995) (noting fee awards of 30 to 50% are more common in cases with funds of $10 million or less).

At this preliminary stage, the attorneys' fees contemplated by the Agreement are within the range of reasonableness such that notice can be directed to the class.

### 4. There Are No Other Related Agreements.

Rule 23(e)(3) requires parties to identify "any agreement made in connection

with" the settlement: "related undertakings that, although seemingly separate, may

[] influence[] the terms of the settlement by trading away possible advantages for

the class in return for advantages for others." Fed. R. Civ. P. 23(e), 2003 Advisory

Committee notes.  Here, Plaintiffs have not entered into any such agreements.  To

the contrary, Ms. Le's individual claims against Walgreens remain.

### D.     The Agreement Treats Class Members Equitably.

The proposed Agreement does not contemplate any preferential treatment of

class representatives or segments of the class.  *See* Fed. R. Civ. P. 23(e)(2)(D).

Matters of concern for the Court may include "whether the apportionment of relief

among class member takes appropriate account of differences among their claims."

Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee notes.

Under the terms of the Agreement, Settlement Class Members will be

compensated based on the type and extent of their injuries on a *pro rata* basis.  *See*

Agreement ¶ III.N.1.a.  Specifically, allocation of the Net Settlement Amount

among class members will depend on the amount they worked as pharmacists at

Walgreens during the class period, measured in Compensable Workweeks.  *Id.*  A

multiplier (2.0x) is applied to workweeks before June 1, 2018, which corresponds

to Plaintiffs' allegations that policies in place during that time resulted in additional

instances of missed and non-compliant rest breaks.  *Id.*  Such distribution plans are

generally considered to be fair and reasonable.  *See, e.g.*, *Thompson v.

Transamerica Life Ins. Co.*, No. 18-cv-05422, 2020 WL 6145105, at *12 (C.D. Cal.

Sept. 16, 2020) (Snyder, J.) ("Pro rata settlement allocation, with no class member

being favored over others, such as proposed here, has repeatedly been deemed fair,

adequate, and reasonable."), *appeal pending*, 9th Cir. Case No. 20-56088.[11]

_____

[11] *See also Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL
7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members
by awarding a pro rata share' to the class members based on the extent of their
injuries.") (citation omitted); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 601, 608 (N.D. Cal.
2015) (approving pro-rata distribution as fair and reasonable); *In re High-Tech Emp.*

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

1     The Settlement Agreement includes $10,000 service awards for named Ms.

2  Le and Ms. Dao, in recognition of their commitment and contributions to the

3  litigation.  Such service awards "are intended to compensate class representatives

4  for work undertaken on behalf of a class [and] 'are fairly typical in class action

5  cases.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)

6  (citation omitted).  Both Plaintiffs served as the face of this litigation for over two

7  years, prepared for and sat for deposition, and responded to extensive written

8  discovery.  An appropriate award is reasonable and typical in class actions that

9  settle at similar procedural postures.  *See, e.g.*, *Vandervort v. Balboa Capital Corp.*,

10  8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) (approving $10,000 service award).

11  **VI.    <u>THE SETTLEMENT CLASS MERITS CERTIFICATION.</u>**

12     The Court also must determine that it is likely to certify the Settlement Class,

13  under Rule 23(a) and (b)(3), for purposes of judgment on the proposal.  *See* Fed. R.

14  Civ. P. 23(e)(1)(B)(ii); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

15  (1997); Manual for Complex Litigation § 21.632 (4th ed. 2004) .

16     The criteria for class certification are applied differently in litigation

17  classes and settlement classes.  In deciding whether to certify a
   litigation class, a district court must be concerned with manageability

18  at trial.  However, such manageability is not a concern in certifying a
   settlement class where, by definition, there will be no trial.

19  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556–57 (citing *Amchem*, 521

20  U.S. at 620).  At the same time, "a proposal to certify a settlement class presents

21  other concerns—the risk of collusion chief among them. . . . Therefore, the aspects

22  of Rule 23(a) and (b) that are important to certifying a settlement class are 'those

23  designed to protect absentees by blocking unwarranted or overbroad class

24  definitions.'"  *Id.* at 558 (quoting *Amchem*, 521 U.S. at 620).  The Settlement Class

25  satisfies these criteria under Rule 23(a) and (b)(3).

26

27  *Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2,

28  2015) (approving pro-rata distribution of fractional share based upon class members'
   total base salary as fair and reasonable).

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

**A.**   **The Numerosity, Commonality, Typicality, and Adequacy Requirements of Rule 23(a) Are Met.**

This Court held that the proposed litigation class met the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  Cert. Order at 6-10.  The Settlement Class is identical to the litigation class that Plaintiffs previously sought to certify (*compare id.* at 5 *with* Agreement ¶ I.C) and there has been no change in circumstances that necessitate a change in the Court's analysis of these Rule 23(a) elements.  The Court therefore should again find that these elements are satisfied.

**B.**   **The Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 594.  In the settlement context, the predominance standard is relaxed because there will be no trial.  *Id.* at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.");  *In re Hyundai*, 926 F.3d at 558.

As such, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement.  A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable."  *In re Hyundai*, 926 F.3d at 558.  Courts "will certify settlement classes although they had previously denied certification of the same class for litigation purposes."  Rubenstein, 3 Newberg on Class Actions § 7:35 (5th ed. 2020).[12]  In *White v. Experian Info. Sols., Inc.*, No. 05-cv-01070 (C.D. Cal.)

---

[12] *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2020

1 ("*White*"), for example, this Court preliminarily approved a Settlement Class after

2 tentatively denying plaintiffs' prior motion to certify a litigation class (albeit a

3 slightly different one). *See White*, Dkt. No. 1067 (June 16, 2017) at 6, 23.  Here,

4 certification of a Settlement Class is likewise appropriate.

5       Because Plaintiffs now seek certification for purposes of settlement only, any

6 intractable manageability problems posed by such individualized issues will not be

7 borne out during trial for the simple fact that there will be no trial. *See In re*

8 *Hyundai*, 926 F.3d at 560 (". . . the potential individual questions of reliance . . .

9 would primarily implicate trial management issues, which we do not consider when

10 conducting a predominance analysis for a settlement class"); *In re Diet Drugs*, Nos.

11 1203, 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000) (certifying a

12 settlement class despite the presence of issues that would have required individual

13 proof at trial, stating: "[I]ndividual issues relating to causation . . . disappear

14 because the settlement's objective criteria provide for an objective scheme of

15 compensation.").  "[A]s the Settlement is structured, common questions of law and

16 fact overwhelm individual issues," *White*, Dkt. No. 1067 at 20, and the Court thus

17 should find the predominance requirement is satisfied.[13]

18 _____

19 WL 7264559, at *3, *9-11 (N.D. Cal. Dec. 10, 2020) (certifying settlement class

20 after previously denying certification of litigation class under Rule 23(b)(3)); *In re*

21 *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333, 2013

WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013) (certifying settlement class after

22 previously denying certification of litigation class based on skepticism that

23 plaintiffs had presented a methodology that could demonstrate generalized proof of liability).

24 [13] Ample factual evidence supported findings that common policies applied to

25 Walgreens' California pharmacists, and that such policies governed pharmacists'

conduct during rest breaks. *See, e.g.*, Cert. Order at 11 ("Plaintiffs have shown that

26 Walgreens required Class members to remain on-premises.").  Plaintiffs' expert

27 opined on the feasibility of statistical analysis to prove that class members did miss

rest breaks. *See generally* Dkt. No. 99 at 7-8; Dkt. No. 110-48.  The Court's order

28 denying certification thus indicated a concern—not with the existence of common

policies or Plaintiffs' ability to marshal evidence of missed rest breaks—but rather

Moreover, resolution of thousands of claims in this one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. Fed. R. Civ. P. 23(b)(3); *see also In re Walgreen Co. Wage & Hour Litig.*, No. 11-cv-7664, 2014 WL 12853545, at *6 (C.D. Cal. June 24, 2014) ("[T]he alternative to class action, *i.e.*, individualized litigation, would be inefficient, costly, and unwieldy, as the Court would potentially be forced to hear thousands of individualized cases."); *Malta v. Fed. Home Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("[C]onsiderations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits"; the "small individual claims of class members" made it "unlikely that individual actions will be filed"). Further, "the potential for relatively small amounts of individual damages" means that "it is unlikely that individual class members will have an interest in prosecuting separate actions." *In re Walgreen Co.*, 2014 WL 12853545, at *6.

In sum, provisional certification is appropriate under Rule 23(b)(3).

## C.     The Court Should Appoint Class Counsel.

Rule 23(g) separately requires this Court to appoint class counsel to represent the Settlement Class. *See* Fed. R. Civ. P. 23(g)(1) & (g)(3). In evaluating the appointment of class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' Counsel have considerable experience in successfully prosecuting employment class actions and other complex litigation. Hutchinson Decl. ¶¶ 48–68;

---

with class-wide proof of a causal connection between the two. *See, e.g.*, Cert. Order at 12 ("[W]hether the policy *resulted* in an employee remaining at the ready would necessitate individualized inquiry to resolve." (emphasis original)); *id.* at 13 ("[A]rgument that an individual class member was forced to remain on call during a rest break would necessitate individualized inquiry").

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

Siegel Decl. ¶¶ 4–18.  They have committed the resources necessary to represent the Settlement Class, and will continue to manage the case efficiently and diligently work to obtain settlement approval and, if approved, implementation of the Settlement.  Hutchinson Decl. ¶ 47; Siegel Decl. ¶¶ 43–44.[14]  Plaintiffs therefore request the appointment of King & Siegel LLP and Lieff Cabraser Heimann & Bernstein, LLP as Settlement Class Counsel.

## VII. __THE COURT SHOULD APPROVE THE NOTICE PROGRAM AND DIRECT NOTICE TO THE SETTLEMENT CLASS.__

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  A class action settlement notice is satisfactory if it generally describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Online DVD-Rental*, 779 F.3d at 946; *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (the form of notice is "adequate if it may be understood by the average class member").  For a Rule 23(b)(3) class, the notice must be "the best . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem*, 521 U.S. at 617; *see also* Fed. R. Civ. P. 23(c)(2)(B).

---

[14] Plaintiffs' Counsel have worked cooperatively and effectively to litigate this case, including by:  (i) investigating the underlying facts, and researching and evaluating legal claims; (ii) propounding multiple sets of document requests and interrogatories; (iii) reviewing over 300,000 pages of responsive documents; (iv) responding to Walgreens' requests for production and interrogatories; (v) conducting extensive meet and confer sessions regarding discovery issues; (vi) working with experts and preparing expert reports; (vii) taking depositions of Walgreens' Rule 30(b)(6) witnesses and expert; (viii) defending Plaintiffs' depositions; (ix) moving for class certification and reconsider; (x) briefing the pending appeal; (xi) participating in multiple mediation sessions; (xii) negotiating the proposed settlement and settlement papers; and (xiii) drafting this motion. Hutchinson Decl. ¶ 47.

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548

The proposed notice program and Notice Packet described above meets all of these requirements.  *See generally* Agreement ¶ III.M.2 & Notice Packet.

## VIII.   THE FINAL FAIRNESS HEARING SHOULD BE SCHEDULED.

The last step in the approval process is a Final Fairness Hearing at which this Court may hear all evidence and argument necessary to determine whether to grant final approval of the Agreement.  Plaintiffs respectfully request that the Court set the following schedule for further Settlement-related proceedings.

| | |
|---|---|
| Deadline for Class Counsel to file their application for attorneys' fees and costs. | 30 days after the Settlement Administrator mails Notice Packets to Class Members. |
| Deadline for Class Members to opt out of the Settlement Class or submit objections to the proposed Settlement and/or to Class Counsel's fee application. | 60 days after the Settlement Administrator mails Notice Packets to Class Members.  Agreement ¶ I.AA. |
| Deadline for Class Counsel to file their motion for final approval. | 35 days before the Final Fairness Hearing |
| Deadline for Class Counsel to submit their responses to any objections. | 7 days before the Final Fairness Hearing |
| Final Fairness Hearing. | 91 days (13 weeks) after the Settlement Administrator mails Notice Packets to Class Members, or as soon thereafter as the Court's schedule permits. |

## IX.   CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that this Court (1) find it will likely approve the Agreement; (2) find it will likely certify the Settlement Class; (3) direct notice to the Settlement Class; (4) appoint Plaintiffs as representatives for the Settlement Class for purposes of disseminating notice; (5) appoint King & Siegel and Lieff Cabraser as counsel for the Settlement Class; (6) authorize retention of CPT as notice and claims administrator; and (7) schedule a Final Fairness Hearing.

Respectfully submitted,

Dated:  March 5, 2021

**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**

By: _Daniel Hutch_
   Daniel Hutchinson

Daniel Hutchinson (Bar No. 239458)
dhutchinson@lchb.com
Lin Y. Chan (Bar No. 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
KING & SIEGEL LLP
724 S. Spring Street, Suite 201
Los Angeles, California 90014
Telephone:  (213) 419-5101
Facsimile:   (213) 465-4803

*Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' UNOPPOSED MOTION TO DIRECT
NOTICE TO THE CLASS
CASE NO. 8:18-cv-01548